UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

-against-

GREGORY W. GRAY, JR., ARCHIPEL CAPITAL LLC, and BIM MANAGEMENT LP,

Defendants,

-and-

ARCHIPEL CAPITAL – AGRIVIDA LLC, et al.,

Relief Defendants.

15 Civ. 1465 (LAK)

ECF Case

---

**FOURTH AND FINAL APPLICATION OF THE RECEIVER FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD January 1, 2017 to October 31, 2019 AND FOR AN INCREASE IN THE FEE CAP.**

Lucien A. Morin, II, (the "Receiver" or "Morin"), having been appointed by order of the Court on March 25, 2015 ("Appointment Order") *[DE 35]*, as receiver ("Receiver") for the Defendants Archipel Capital LLC and BIM Management LP (collectively, the "Corporate Defendants") and the Relief Defendants Archipel Capital - Agrivida LLC, Archipel Capital - Amyris Biotechnologies LP, Archipel Capital – Bloom Energy LP, Archipel Capital – Late Stage Fund LP, Archipel Capital - Lineagen LP, Archipel Capital - Social Media Fund LP, Archipel Capital - Social Media Fund II LP, Archipel Capital –Social Media Fund LP 3, Archipel Capital - Social Media Fund LP 4, and Bennington-Everloop LP (collectively, "Relief Defendants"),

1

submits this Fourth and Final Application for Compensation and Reimbursement for Expenses for the period January 1, 2017 to October 31, 2019, (the "Fourth Fee Period") seeking payment of his fees as set forth below in the total amount of $48,000 plus expenses totaling $834.40; to increase the fee cap by $32,000, for the good cause shown herein; and for the release of the $14,886 in fee holdbacks from the prior fee applications. As described herein, the $48,000 fee application represents a 41% discount from the Receiver's total bill.

The Appointment Order set forth the duties and obligations of the Receiver with respect to certain assets of, or in the possession of, the Corporate and Relief Defendants (collectively the "Receivership Assets") and further that any request by the Receiver for compensation conform to the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions").

On October 5, 2015, this Court expanded and modified the duties and powers of the Receiver *[DE 89]*("Expansion Order"). As part of that order, Archipel Capital - Amyris Biotechnologies LP ("Amyris") was removed from the Receivership Estate and is no longer under the authority of the Receiver.

As disclosed in the Receiver's prior requests for compensation, prior, there were two actions commenced in the United States District Court for the Northern District of New York, both of which are still pending (a) *Goldberg v. Gray,* Civ No. 5:15cv538 (the "Goldberg Action"); and (b) *McEssy v. Gray,* Civ No. 5:15cv0162 (the "McEssy Action").

The Receiver has been served with and required to respond to separate discovery demands in each of these actions. These services were not contemplated at the time of the

2

Employment Order or the cap set under the Cap Increase Order, dated June 21, 2019 *[DE 180]*.

During the Fourth Fee Period, January 1, 2017 to October 31, 2019 as required by this Court's prior order, the Receiver has continued to file Quarterly Accounting Reports for the period January 1, 2017, to and including September 31, 2019 *[see DE 340]*.

On June 21, 2016, this Court increased the "cap" on compensation from $100,000 to $175,000 *("Cap Increase Order") [DE 180]* and authorized $7,500 for counsel services to the Receiver in relation to the McEssy Action.[1]

On January 9, 2017, this Court approved the Joint Plan as amended by the Commission and the Receiver *[DE 293]*.

On February 16, 2017, the Receiver filed his report ("Receiver's Asset Identification Report") *[DE 303]* as directed by the Court by its February 1, 2017 Order *[DE 302]*.

On March 13, 2018, the Receiver sent out the First Distribution of $750,000 to those investors holding allowed claims who qualified for the "true up" distribution.

On October 8, 2019, the Receiver commenced distribution of a second true up distribution in the amount of $1,200,000.

## PRIOR APPLICATIONS AND AWARDS

The First Interim Compensation Award for the period March 25, 2015, to and including June 30, 2015, was approved by order of this Court dated October 6, 2015 *[DE*

---

[1] As reflected in the Receiver's Asset Identification Report, in addition to the Receiver's First and Second Interim Compensation approved by the Court, accountant fees of $15,000 were approved by the Court on March 26, 2016

3

*91]* in the total amount of $32,173.47 ($32,000 in fees plus expenses of $173.47) and provided for a 10% holdback ($3,200) subject to the Court's final approval of the Receiver's fees at the conclusion of the Receivership.

The Second Interim Compensation Award for the period July 1, 2015, to and including December 31, 2015, was approved by order of this Court dated July 11, 2016 *[DE 203]* in the total amount of $56,214.82 ($7,500 for services in the Goldberg Action as per the prior order of this Court *[DE 89]*, $48,360 in fees plus $354.82 in expenses) and provided for a holdback of $4,836 subject to the Court's final approval of the Receiver's fees at the conclusion of the Receivership.

The Third Interim Compensation Award for the period January 1, 2016 through and including December 31, 2016, was approved by order of this Court dated July 5, 2017 *[DE 314]* in the amount of $68,500 in fees plus expenses of $1,010.59 and provided for a 10% holdback ($6,850) subject to the Court's final approval of the Receiver's fees at the conclusion of the Receivership and $7,500 for services related to the McEssy Action, which was not subject to the Fee Cap or a holdback.

In support of this Fourth and Final Compensation Application and Application to increase the Fee Cap, the Receiver declares and affirms under penalty of perjury as follows:

**PRELIMINARY STATEMENT**

1. By this Application, the Receiver seeks allowance of fees in the total amount of $48,000 comprised of $42,500 for services rendered in connection with the Receivership Estate during the Fourth Fee Period covered by the Cap, plus $5,500 for services directly related to the

---

*[DE 143]* leaving $79,640 (excluding expenses) of the $175,000 Cap remaining (the prior Goldberg approved fee of

4

Goldberg and McEssy Actions and reimbursement of the actual, reasonable and necessary out-of-pocket expenses in the amount of $834.40 advanced by the Receiver or MCCM during the Fourth Fee Period.

## JURISDICTION

2. This Court has jurisdiction over these proceedings pursuant to: (i) Section 22(a) of the Securities Act of 1922, (ii) Sections 21(e) and 27 of the Securities Exchange Act of 1934, and (iii) Section 214 of the Investment Advisers Act of 1940.

3. This Court has jurisdiction over this Application pursuant to Appointment Order and Expansion Order, which provide that all applications for costs, fees and expenses of the Receiver and those employed by him shall be made by application to the Court setting forth in reasonable detail the nature of such costs, fees and expenses.

## BACKGROUND

### A. The Securities and Exchange Commission Action

4. A complaint was filed on February 27, 2015 (the "Action), by the Commission against the above named Defendants and Relief Defendants and the case is still pending.

5. On March 23, 2015 an Order Granting Preliminary Injunction, Asset Freeze and Other Interim Relief ("Asset Freeze Order") was entered by the Court *[DE31]*,

6. Subsequent to the entry of the Asset Freeze Order, the Court pursuant to its May 20, 2015 order directed the Receiver to receive and hold the proceeds from the sale of Defendant Gray's vehicles, residence and the Florida property for safekeeping pending further order of the Court in the Receivership account at Rabobank N.A. ("Gray Frozen Account").

---

$7,500 for services was in addition to the Cap.)

## B. The Receiver's Duties

7. The Receiver's initial duties were set forth in the Appointment Order and pursuant to Section VIII, the Receiver as part of the Preliminary Injunction was directed to:

(a) preserve the *status quo*; (b) ascertain the extent, if any, of commingling of funds among the Corporate Defendants and Relief Defendants; (c) ascertain the true financial condition of the Corporate Defendants and Relief Defendants and the disposition of investor funds; (d) prevent dissipation of the property and assets of the Corporate Defendants and Relief Defendants; (f) prevent the encumbrance or disposal of the Assets; (g) preserve the books, records and documents of the Corporate Defendants and Relief Defendants; and (h) be available to respond to investor inquiries.

8. As referenced above, the Receiver's duties were modified and expanded by subsequent orders of this Court.

9. Pursuant to the Appointment Order, with the approval of this Court, the Receiver was also authorized to engage and employ persons, including accountants, attorneys and experts to assist the Receiver.

10. During the Fourth Fee Period, the Receiver, a member of MCCM, utilized MCCM to act as his counsel and, as per the Joint Plan, worked with Goldin Capital Advisors with respect to the disposition of the Relief Defendants' assets.

## BILLING PROCEDURES

11. MCCM (and the Receiver as a member of MCCM) maintains time records in the regular course of business, with entries made by each person working on the cases

6

contemporaneously with the rendering of the service. Annexed hereto as **Exhibit A** is a summary taken from the time records kept in the ordinary course of business by MCCM during the Fourth Fee Period (a) setting forth in detail by classification of the category of services rendered by the Receiver and MCCM personnel, the dates upon which such services were rendered, the time spent, and the identity of the individual who performed such services, the customary hourly rate that MCCM charges for the same or similar services rendered by the Receiver, attorney and the paraprofessional and (b) summarizing by category the total time spent.

12. According to the application for consideration previously submitted, the Receiver (and where appropriate, his counsel) was to be compensated at the rate of $350 per hour.

13. Since his appointment, Morin has served as both a Receiver and, when appropriate, as a lawyer. Because, in many instances, it would be difficult to allocate between the two categories of services, Morin's time has been summarized using various task description categories set out in this application.

14. In addition, William E. Brueckner, a partner with MCCM, has provided litigation services on behalf of the Receivership Estate, and specifically in connection with the matters pending in the U.S. District Court for the Northern District of New York.

15. MCCM also maintains records of all expenses incurred in the ordinary course of business. Annexed hereto as **Exhibit B** is a schedule of the type and amount of expenses incurred during the Fourth Fee Period for which the Receiver seeks reimbursement.

### SUMMARY OF SIGNIFICANT ACTIVITIES
### DURING THE FOURTH FEE PERIOD

16. During the Fourth Fee Period, a number of matters and issues to bring this case to

closure were accomplished. They included:

(a) Filing of a motion for an order fixing investor claims and authorizing an initial distribution under the approved joint plan of distribution. On March 13, 2018, upon Court approval of the motion, the Receiver made an initial distribution ($750,000) to all qualified investors. Based on advice from Goldin Capital Advisers and Edward Jones, the Receiver liquidated Bloom Energy LP's shares in Bloom Energy Corporation. The funds from the liquidation were the source for the second distribution ($1,200,000) on October 8, 2019. The Receiver also was successful in having the shares of Kisameet Glacial Clay Inc. transferred to the Receiver.

(b) Review and filing of the 2017 and 2018 tax returns prepared by the Receiver's accountant and issuance of the 2017 and 2018 K-1s to the investors;

(c) Responding to Gregory Gray's numerous emails and letters, many of which were repetitive.

17. As with the prior Compensation Applications, rather than burden the Court by repeating the narrative, the specifics of each and every service performed are detailed in the time records set out in Exhibit A.

**A.** **Administration and Asset Activities**

18. The Receiver and his paralegal continue to spend time performing general case administration tasks related to this Receivership Proceeding. The Receiver's counsel has provided additional assistance in reviewing the legal basis when needed as to certain matters before the Court. These activities are performed as needed and are not easily classified in separate categories but the scope of the same are identified in **Exhibit A,** and include those set

out below.

### i. **Investor and SEC Communications**

19. The Receiver and his staff have continued to devote resources to communicating with investors and creditors.

20. During the Fourth Fee Period, the Receiver and the SEC have maintained close contact and have had periodic status calls regarding financial and other issues related to the this action, inclusive of the proposed distributions under the approved Joint Plan, the liquidation of assets, and dealing with the numerous objections and requests filed by Gray during the period.

### ii. **Asset Analysis and Recovery**

21. During the Fourth Fee Period, the Receiver completed the sale of shares in Bloom Energy Corporation and completed the transfer of shares of Kisameet Glacial Clay Inc. to the Receiver. The Receiver continued discussions with Goldin Capital Advisors regarding the remaining assets.

### B.  **Issues related to Mr. Gray**

22. During the Fourth Fee Period, Mr. Gray continued his dialogue with the Commission as well as participated in the NDNY Actions, asserting a number of positions unrelated to the Receiver.

23. As referenced in the attached time records, Mr. Gray, when an "immediate" response was not received, would continue, sometimes daily, with his demands or requests to the Receiver.

24. The Receiver provided to Mr. Gray, as well as to his probation officer,

9

accountings of the "Gray Funds" which the Receiver oversaw under the prior orders of this Court.

25. In light of Mr. Gray's request that Archipel Capital LLC be released from the Receivership, and now that the Kisameet shares are under the control of the Receiver, a joint request to terminate the receivership of Archipel Capital LLC will be made by the Commission and the Receiver contemporaneously with this application.

C. **NDNY Litigation**

26. During the Fourth Fee Period, the Receiver or his counsel continued to monitor the Goldberg and McEssey Actions.

27. The Receiver was served with, and required to respond to information and document production subpoenas in both Actions.

28. The time expended by the Receiver and counsel, is more particularly itemized and described in **Exhibit A**, under the Goldberg and McEssy Actions (sometimes referred to collectively as the "NDNY Litigation").

## DETERMINATION OF THE RECEIVER'S REQUESTED FEES

29. In preparation of the Exhibits to this Application, the Receiver utilized the MCCM software and billing program. The Receiver calculated his request for compensation by multiplying (a) the time spent on services by (b) the hourly rate assigned to the Receiver, each attorney or paralegal rendering services and (c) exercising a billing judgment component as shown.

30. In accordance with the criteria enunciated for evaluating the fair and reasonable

value of legal services, the Receiver respectfully represents:

> <u>Time and Labor Required.</u>
> The Receiver has spent considerable time attending to the matters which have arisen in this Receivership. Furthering the administration of the Receivership Estate has been accorded the highest priority by the Receiver.
>
> <u>Skill Requisite to Perform Legal Services. Experience, Reputation and Ability.</u>
> The Receiver believes that his expertise in the area of corporate reorganization and liquidation, coupled with litigation skills, has and will contribute to the progress of this case.
>
> <u>The Customary Fee.</u>
> The Receiver respectfully submits that the fees sought herein are customary and based on the usual criteria in matters of this type, and are commensurate with fees counsel or receivers have been awarded in comparable representations.
>
> <u>Whether Fee is Fixed or Contingent.</u>
> All fees sought by the Receiver are based on a rate times hour calculation, not on a "fixed" fee or contingency basis.
> All fees and expenses are subject to the approval of this Court.
>
> <u>Best Interest of the Receivership Estate</u>
> All fees and expenses specified in this application were incurred in the best interests of the Receivership Estate

## VALUATION OF SERVICES

31. The hourly charge by the Receiver was calculated at the submitted $350 per hour. Partners of the Law Firm in federal matters bill in the range of $325 to $350. With regard to this particular matter, the paralegal time has been computed at the rate of $125 per hour as noted. Where appropriate, time entries for interoffice conferences have been included in **Exhibit A** but the requested fee has been subject to a billing adjustment to reflect the same. The total time effort of the attorneys and paralegals expended in the matters outlined herein through October 2019, was 338.5 hours having a gross time value of $81,867.50, for which the Receiver is

applying for payment of a total of $48,000, representing a 41% discount.[2]

32. After review of the time and services provided by the Receiver and his counsel, and the available assets in then Estate, the Receiver has exercised his billing judgment and has reduced the total time shown on Exhibit A.

33. By this Application, the Receiver seeks reimbursement of the actual, reasonable and necessary out-of-pocket expenses advanced by MCCM in the amount of $834.40. The firm's policy is to charge clients in all areas of practice for all expenses incurred in connection with the engagement. MCCM utilizes a "user fee" client billing system under which a client is charged only for those expenses incurred on its behalf. With respect to the requested reimbursement, the Receiver is seeking reimbursement of postage expenses, including international mailings, relating to the K-1s and other notices and correspondence with respect to the investors, as well and express mail delivery as posted to the account and reflected in **Exhibit B**.

34. Other than the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof (other than with the Receiver's Law Firm of whom he is a member).

35. As per the Billing Instructions, the Receiver represents to the Court that he had previously provided the Commission with a copy of this Fourth Interim Application for its review.

---

[2] For the sake of completeness, the Receiver has included time entries related to the preparation of the Receiver compensation application(s) in the billing reports included in Exhibit A. In addition, the Receiver has exercised billing judgment as reflected on Exhibit A not only as to the NDNY Litigation, but also related to the Gray matters

WHEREFORE, the Receiver requests an order (i) allowing a total award of $48,000 comprise of $42,500 for services cover by the fee cap other than the McEssy or Golberg Actions, plus $3,500 for services in the McEssy Action and $2,000 for services in the Goldberg Action for services during the Fourth Fee Period of January 1, 2017 to October 31, 2019, said amount being exclusive of fee application preparation and after exercise of the Receiver's billing judgment reduction as reflect in Exhibit A; (ii) allowing reimbursement for advances and out-of-pocket expenses incurred during the Fourth Fee Period of $834.40; (iii) increasing the Fee Cap by the sum of $32,000 to permit, good cause having been shown, payment of the total compensation requested herein; (iv) authorizing payment of $14,886 holdback under the First, Second and Third Interim Awards; (v) authorizing payment of the awarded amounts out of the funds of the Relief Defendants held in the Receivership Bank Account; and (iv) granting such other and further relief as may be warranted.

Dated:  Rochester, New York
        November 8, 2019            /s/ Lucien A. Morin II
                                    Lucien A. Morin, II, Esq.
                                    McConville, Considine, Cooman & Morin, P.C.
                                    25 East Main Street, Suite 400
                                    Rochester, New York 146

---

and the administration of this case. The total "write down" of the gross recorded time during the Fourth Fee Period amounts for all matters to an approximate 41% reduction.

**CERTIFICATION:**

I, Lucien A. Morin II, Receiver certify that: I have read the above Application; to the best of my knowledge, information and belief formed after reasonable inquiry, the Application and all fees and expenses are true and accurate and comply with the Billing Instructions; all fees contained in the Application are based on the rates listed in the fee schedule attached hereto and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed.

November 8, 2019                    /s/ Lucien A. Morin II
                                    Lucien A. Morin, II, Esq.
                                    25 East Main Street, Suite 400
                                    Rochester, New York, 14614

17222.001# 8447